Simon BRACH, Petitioner,

v.

W. R. NELSON, Warden, FCI, Danbury,
Connecticut, Respondent.

Civ. No. B–78–365.

United States District Court,
D. Connecticut.

Supplemental Memorandum of
Decision Jan. 31, 1979.

April 18, 1979.

Joseph W. Ryan, Jr., Mineola, N.Y., for petitioner.

Cheryl B. Wattley, Asst. U.S. Atty., New Haven, Conn., for respondent.

## MEMORANDUM OF DECISION

DALY, District Judge.

Petitioner is presently incarcerated at the F.C.I., in Danbury, Connecticut as a result of a conviction on one count of theft from a foreign shipment in violation of 18 U.S.C. § 659. On December 19, 1975, petitioner was sentenced to a five-year regular adult term of imprisonment and he began service of this sentence on November 4, 1976. Petitioner's initial parole hearing was held on February 6, 1978. The Commission, by Notice of Action dated February 23, 1978, denied petitioner parole and continued him beyond the applicable guideline period until his mandatory release date with a statutory interim hearing during August of 1979.[1]

After exhausting the Commission's administrative remedies, petitioner, with counsel, filed this action under 28 U.S.C. § 2241 seeking a new parole hearing on the grounds that the Commission improperly extended his parole date beyond the guideline period.[2] Specifically, petitioner attacks the reasons given in the Notice of Action for going above the guidelines as the very same reasons used by the Commission to determine the guideline period for his release. This Court is unable to address the merits of petitioner's claim since the Notice of Action, itself, is fatally defective.

## II.

The Commission, seeking to quantify objectively the factors involved in the parole determination, has adopted pursuant to 18 U.S.C. § 4203(a) guidelines for the purpose of promoting "a more consistent exercise of discretion, and enabling fairer and more equitable decision making in granting parole." 28 C.F.R. § 2.20(a).[3] Under the guidelines an evaluation sheet must be prepared in each case for computing a salient factor score. This score serves as an aid in determining the parole prognosis (potential risk of parole violation).[4] 28 C.F.R. § 2.20(e). Pursuant to the guidelines, the Commission then applies this score to petitioner's severity offense rating to determine the customary parole release date.

In the ordinary case, where a decision is reached to apply the guideline period after a finding that no special aggravating or mitigating factors are present, a Notice of Action containing the offense severity rating, salient factor score, period of incarceration, and applicable guideline period followed by the conclusion that a decision out-

1. At the time of the hearing, the prison officials at the Federal Correctional Institution recommended that petitioner be paroled through the Federal Treatment Center in New York City.

2. Petitioner contended as well that the Commission acted improperly by basing its decision on the very same factors which the sentencing judge considered and by failing to consider both his conduct on parole prior to the instant offense and "his fine institutional records." This Court finds no need now to address these claims since relief is granted on other grounds.

3. Congress has vested the authority to grant or deny parole in the Parole Commission. 18 U.S.C. § 4203. This authority has been judicially interpreted to be exclusively within the discretion of the Commission. *Billiteri v. United States Board of Parole*, 541 F.2d 938, 944 (2d

Cir. 1976). Nevertheless, this Court does have the authority to review a decision by the Commission. The standard of review is limited to whether the decision is arbitrary and capricious or is an abuse of discretion. *Billiteri, supra.*

4. The highest and most favorable salient factor score obtainable is eleven points based upon seven categories of "offender characteristics". These seven categories encompass prior convictions, prior incarcerations, age at first commitment, nature of offense, parole violation or revocation, drug dependence, and employment prior to incarceration.

Petitioner had a salient factor score of four and a high severity offense rating. Thus, the applicable guideline period would have been during the 26–34 month period in his sentence.

side the guidelines is not warranted would constitute an entirely sufficient notice. *See Lupo v. Norton*, 371 F.Supp. 156, 162 (D.Conn.1974).

■ Parole within these guidelines is not automatic, however, and the Commission may, upon a showing of good cause, go outside the guidelines. However, in these kinds of cases, the Commission is required to provide the prisoner *"with particularity the reasons for its determination,* including a summary of the information relied upon." Further, the prisoner "shall receive *a specific explanation* of the factors which caused the Commission to reach a determination outside the guidelines." [Emphasis added] 18 U.S.C. § 4206(c). Judge Newman in *Randaccio v. Wilkinson*, 415 F.Supp. 612 (D.Conn.1976), stated that the primary purpose of the requirement is to allow the prisoner and a reviewing court to "determine that the case received individualized consideration, and not simply a *pro forma* recitation of the pertinent regulation." *Id.* at 614. Inasmuch as the Commission in the present case went above the guideline period in denying petitioner parole, this Court now focuses on whether the Notice of Action[5] sufficiently sets forth the reasons for the decision of the Commission to permit this Court to render an informed decision concerning petitioner's claim.

In addition to the four elements normally included in the Notice of Action,[6] the Commission, pursuant to the requirement, stated the reason for going beyond the guideline period: "A decision above the guidelines at this consideration appears warranted because you were on reparole at the time of the instant offense; have a history of similar offenses."[7] Petitioner contends that these factors are the same as those that are considered in computing the salient factor score. Under the salient factor score, a numerical value is attached to the number of past offenses and the status of parole at the time of the instant offense.[8]

The government contends, however, that the Notice of Action sufficiently sets forth the factors which justify continuing petitioner beyond the guideline period and that the factors stated are distinguishable from those considered in computing the salient factor score.[9] With respect to the first

---

**5.** Notice of Action dated February 23, 1978 states:

Your offense behavior has been rated as high severity because the stolen items were valued at $100,000. You have a salient factor score of 4. You have been in custody a total of 18 months. Guidelines established by the Commission for adult cases which consider the above factors indicate a range of 26–34 months to be served before release for cases with good institutional program performance and adjustment. After review of all relevant factors and information presented, a decision above the guidelines at this consideration appears warranted because you were on reparole at the time of the instant offense; have a history of similar offenses.

As required by law, you have also been scheduled for a statutory interim hearing during August of 1979.

**6.** The Notice of Action included (a) petitioner's classification in the "high severity" category; (b) his salient factor score; (c) the eighteen months petitioner had been incarcerated; and (d) reference to the guideline range of 26–34 months.

**7.** The word "reparole" in the original Notice of Action was changed subsequently to "parole" on appeal before the Regional Director.

**8.** As set forth in the guidelines, the factors in question are designated as Items A & E and read as follows:

*Item A*
(No prior convictions adult or juvenile) = 3
1 prior conviction = 2
2 or 3 prior convictions = 1
4 or more prior convictions = 0
*Item E*
Never had parole revoked or been committed for a new offense while on parole, and not a probation violator this time = 1
   Otherwaise = 0
Petitioner received the lowest score, zero, both for Item A, and for Item E.

**9.** The government contends that, even if the Notice of Action was incomplete, the Hearing Summary sent to the petitioner shortly after the Commission's final decision remedies the defect. The "Evaluation" section of that document to which this Court believes the government is referring does little more than parrot the Notice of Action and state the Commission's feeling that the petitioner is a poor parole risk. Ironically, this Summary also fails to state that the Commission considered the fact that petitioner was on probation at the time of the offense, although the government now intimates that it was an additional factor upon which the Commission relied.

factor, the government argues that the salient factor score was based only upon whether petitioner's parole was revoked and the Commission's decision was based in part on the additional facts that petitioner was on state probation as well as parole at the time of the offense.

The government's own argument points up the deficiency in the Notice of Action. If the Commission indeed had considered the state probation violation as an additional reason for going above the guidelines, then it should set forth this reason in the Notice of Action pursuant to the guideline Notice requirement.[10] Yet, the Notice of Action in this case made no mention of this factor.

With respect to the second factor, the government argues that because the Notice of Action not only stated a number of past offenses but also that they were similar, the reason given was distinguishable from the salient factor category which concerns only the number of offenses committed. Even assuming that the penalization of a prisoner for similarity of past offenses is permissible under the guidelines, semantic distinctions of this nature without further explanation are inconsistent with the requirement of providing a prisoner and the court with a clear understanding of the reasons for exceeding the guidelines. *See Randaccio, supra.*

Failure of the Commission to specify clearly the reasons for a parole decision, particularly in cases where the parole date exceeds that delineated under the guidelines, impedes the objectivity for which the guidelines were designed and interferes with the ability of reviewing courts to determine the propriety of the Commission's decision. The present case illustrates these adverse effects. Here, petitioner charges that he illegitimately was penalized twice

for being on parole at the time of the offense and for having a history of prior offenses. Based upon the Notice of Action, alone, without the additional information provided to the Court at this juncture of the proceedings, petitioner apparently has a meritorious claim.[11] Had the Commission simply stated the fact of state probation and explained why the similarity of past offenses in this instance adversely affected petitioner's parole date, perhaps the inmate and his counsel would have understood the basis for the Commission's decision and not have pursued this action. And even if suit was filed in any event, this Court would have had an adequate basis to review the Commission's decision to determine whether impermissible doubling of factors had occurred.[12] As the Second Circuit stated, the failure to give sufficient reasons for parole decisions breeds inmate frustration and impedes the development of "a body of rules, principles and precedent . . . which would promote consistency," by the Commission. *U. S. ex rel. Johnson v. Chairman, N. Y. State Bd. of Parole*, 500 F.2d 925, 933 (2d Cir. 1974) *vacated as moot sub nom Regan v. Johnson*, 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289 (1974).

For the reasons stated above, this Court finds that the Notice of Action given in the present case was inconsistent with the express mandate to the Commission to state with particularity the reasons for parole decisions above the guideline period. It is hereby ordered that the Commission afford petitioner Brach a proper Notice of Action within thirty days. As to this and other matters raised by petitioner with counsel in his habeas petition and the accompanying memorandum in support of that petition this Court retains jurisdiction.

It is so Ordered.

---

**10.** Perhaps the Commission did not include the factor of state probation because it is covered by Item E. Whatever the reason, the characterization which the government advances that being on state probation and on parole are additional factors to those set forth in Item E is tenuous at best. *See* n.8 *supra.*

**11.** *See Hamilton v. Chairman, U. S. Parole Commission*, Civil No. 78–367 (D.Pa.1978); *Westbrook v. Chairman, U. S. Parole Commission*, Civil No. 77–918 (D.Pa.1977); *See also, Lupo v. Norton*, 371 F.Supp. 156, 163 (D.Conn. 1974).

**12.** *Id.*

## SUPPLEMENTAL MEMORANDUM OF DECISION

### I.

Petitioner filed this habeas corpus action challenging the Parole Commission's decision to extend his parole date beyond the applicable guideline period.[1] He contended that the Commission acted improperly by considering the same factors both in computing the guideline period and in deciding to go above that period.[2] In its initial ruling on the petition, this Court was unable to render an informed decision since the Commission in the Notice of Action, dated February 23, 1978, had failed to state with particularity the reasons for it's decision. The Court ordered the Commission to furnish petitioner within thirty days a proper Notice. *Brach v. Nelson*, Civil No. B–78–365 (D.Conn. Feb. 1, 1979). The Commission on March 2 of this year sent to petitioner's counsel an amended Notice.[3]

Petitioner, with counsel, now renews his initial challenge. He maintains that the amended Notice merely elaborates on the reasons set forth in the original Notice and that the Commission's decision continues to rest upon petitioner's prior convictions and his parole and probation status—two factors covered by the salient factor score under Items A and E.[4] Petitioner alternatively contends that regardless of whether the Commission impermissibly doubled factors, it failed to set forth good cause for the decision.

The Commission, however, maintains that Item A only designates points based on the number, not the nature, of past convictions and, therefore, the Commission can consider the similarity of those offenses in determining that petitioner particularly was a poor parole risk. The Commission also contends that since under Item E only one point is lost irrespective of the number of parole and probation violations involved, it can consider petitioner's state probation violation as an additionally aggravating factor.

### II.

Pursuant to the Congressional mandate set forth in 18 U.S.C. § 4203(a), the Com-

1. The relevant facts are set forth in *Brach v. Nelson,* Civil No. B–78–365 (D.Conn. Feb. 1, 1979). Presently, petitioner has served thirty-two months of a five year sentence. The guideline range applicable to his case is twenty-six to thirty-four months.

2. Petitioner contended as well that the Commission acted improperly by basing its decision on the same factors which the sentencing judge considered and by failing to consider both his conduct on parole prior to the instant offense and his fine institutional record. We do not reach the merits on these claims since relief is granted on other grounds.

3. The amended Notice of Action reads:
   Your offense behavior has been rated as high severity because the stolen items were valued at $100,000. You have a salient factor score of 4. You have been in custody a total of 18 months. Guidelines established by the Commission for adult cases which consider the above factors indicate a range of 26–34 months to be served before release for cases with good institutional program performance and adjustment. After review of all relevant factors and information presented, a decision above the guideline is warranted because you are a poorer parole risk as indicated by your salient factor score you committed the instant offense while on federal parole and state probation in addition to having your parole revoked previously. You have demonstrated a pattern of committing similar property offenses as evidence [sic] by your two convictions for theft from interstate or foreign shipment perpetrated in a very similar manner, and your two convictions involving possession of stolen motor vehicles. The Commission finds that further criminal activity by you is likely. As required by law, you have also been scheduled for a statutory interim hearing during August of 1979. (Underlining represents the revised portion of this Notice).

4. As set forth in the guidelines, Items A and E read as follows:
   *Item A*
   No prior convictions (adult or juvenile) = 3
   1 prior conviction = 2
   2 or 3 prior convictions = 1
   4 or more prior convictions = 0
   *Item E*
   Never had parole revoked or been committed for a new offense while on parole, and not a probation violator this time = 1
   Has had parole revoked or been committed for a new offense while on parole, or is a probation violator this time = 0
   Petitioner received the lowest score, zero, for both Items.

mission has established guidelines for the purpose of promoting "a more consistent exercise of discretion, . . ." in granting parole. 28 C.F.R. § 2.20(a). Under the guidelines, an inmate's salient factor score is computed to determine the potential risk of parole violation.[5] The Commission then applies this score to the inmate's severity offense rating to determine the customary parole release date.

■ The Commission, however, pursuant to 18 U.S.C. § 4206(c), may depart from the guideline range in a particular case "if it determines there is good cause for so doing." *Id.* Good cause has not been defined specifically in either the enabling legislation or the Commission's own regulations.[6] Courts, faced with the task of enunciating the parameters of this standard, give the Commission wide latitude so long as it adequately explains the decision to the inmate and the decision is neither arbitrary nor capricious. *Mayo v. Sigler,* 428 F.Supp. 1343 (N.D.Ga.1977); *Randaccio v. Wilkinson,* 415 F.Supp. 612 (D.Conn.1976); *See generally, U. S. ex rel. Johnson v. Chairman, N.Y. State Bd. of Parole,* 500 F.2d 925, 934 (2d Cir. 1974) *vacated as moot sub nom., Regan v. Johnson,* 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289 (1974).

■ Nevertheless, where a parole applicant is continued above the guideline period, courts have required the Commission to give reasons beyond those covered by the salient factor score and offense severity rating. In *Lupo v. Norton,* 371 F.Supp. 156 (D.Conn.1974), Judge Newman of this District stated that,

It is simply irrational for seriousness of the offense to be used first to determine

the appropriate guideline period and then to be used again as the stated reason for confining a prisoner beyond that guideline.

*Id.* at 163. Similarly, a reason which merely restates factors already computed in the salient factor score is improper. *Hamilton v. Chairman, U. S. Parole Comm'n,* Civil No. 78–367 (D.Pa.1978); *Westbrook v. Chairman, U. S. Parole Comm'n,* Civil No. 77–918 (D.Pa.1977); *Jacoby v. Arnold,* 442 F.Supp. 144, 148 (M.D.Pa.1977).

### III.

In view of the foregoing, the inquiry is twofold: whether a cognizable distinction exists between the reasons set forth in the amended Notice and the factors covered by the salient factor score and whether the Commission has adequately delineated good cause for its decision.

■ Item A does not cover the nature of a parole applicant's past offenses. This Court rejects petitioner's argument that the Commission, by including only the number of past convictions in the salient factor score, implicitly intended to preclude the Commission from examining the nature of those past offenses. Past criminal activity is accepted as a reliable indicator of future conduct. Thus, considering the broad discretion afforded the Commission in determining good cause, it may rely upon the similarity of petitioner's past convictions in finding that he is a particularly poor parole risk. *Roach v. Bd. of Pardons & Parole,* 503

---

5. The salient factor score is determined mechanically on the basis of nine factors such as prior convictions and incarcerations, prior drug or alcohol involvement, family situation, job expectations, age, parole and probation status, and whether the inmate's offense involved auto theft or checks.

6. The criteria for defining good cause set forth in the guidelines appears at 28 C.F.R. § 2.20(d) and (e) and reads:

(d) The guidelines contain examples of offense behaviors for each severity level. However, especially mitigating or aggravating circumstances in a particular case may justify a decision or a severity rating different from that listed.

(e) An evaluation sheet containing a "salient factor score" serves as an aid in determining the parole prognosis (potential risk of parole violation). However, where circumstances warrant, clinical evaluation of risk may override this predictive aid.

F.2d 1367, 1368 (8th Cir. 1974); *Scarpa v. U. S. Bd. of Parole,* 477 F.2d 278, 281 (5th Cir. 1973). *See generally, Billiteri v. U. S. Bd. of Parole,* 541 F.2d 938, 944 (2d Cir. 1976).

■ This Court finds unpersuasive, however, the Commission's contention that it may rely upon petitioner's state probation violation as an aggravating factor. Item E covers parole revocation, the commission of a new offense while on parole, and violation of probation; an inmate loses one point from his salient factor score irrespective of the number of violations involved or whether they occur at the federal or state level. In formulating the guidelines, the Commission could have adopted the format of Item A and distinguished between state and federal violations if it had intended to penalize more harshly an inmate who had both a parole and state probation violation.[7] Its apparent rejection of this alternative leads this Court to conclude that the Commission had a legitimate reason to restrain reliance on this factor in determining parole prognosis.[8] By continuing petitioner based upon the state probation violation, the Commission circumvents its own guidelines and undercuts the Congressional purpose of bringing predictability and objectivity to the parole decision making process. *See* 18 U.S.C. § 4203(a)(1); 28 C.F.R. § 2.20(a).[9]

## IV.

Even though parole decisions are subject to limited judicial scrutiny, it is established that a decision "cannot stand when it is shown to be based on a reason that is outside the scope of statutory authority." *Battle v. Norton,* 365 F.Supp. 925, 928 (D.Conn.1973). *See also, Zannino v. Arnold,* 531 F.2d 687 (3d Cir. 1976).[10] Here, the

---

**7.** Although the Commission included in the amended Notice of Action that petitioner had previously violated parole it has not in its brief advanced this reason as a distinguishing factor. However, even if the argument were made, the reasoning advanced here with regard to state probation is equally applicable to the previous violation.

**8.** Perhaps the Commission formulated the Item in this manner because it recognized that an inmate could have both a state probation and federal parole violation pursuant to the commission of the one offense for which he is presently incarcerated and therefore should not be subject to a harsher penalty in terms of the salient factor score as a result. Whatever the reason, it is within the Commission's discretion to formulate the guidelines in such a manner as it deems appropriate for measuring parole risk. However, once the guidelines are established, it seems to this Court that the Commission should act in conformity with them or, if it feels adjustments are necessary to obtain a more accurate reading of parole risk, amend them accordingly.

**9.** The legislative intent regarding the purpose of the establishment of guidelines is clear. In S.Rep.No.94–369 on the Parole Commission and Reorganization Act (1976) U.S.Code Cong. & Admin.News, p. 335 et seq., it is stated,

The legislation recognizes the process by which guidelines for release on parole have been established, and provides, through publication and the opportunity for notice and comment, for an orderly procedure to make and change the guidelines. The guidelines take into account the circumstances of the individual both in his personal life and with respect to the offense which he has committed, as well as measuring the severity of the offense involved so as to significantly reduce the area of discretion which the Parole Commission, in fact, has in any given case. The guidelines give definiteness to the indefinite nature of most federal criminal cases—by reducing the opportunity for sentencing disparity and abuse of discretion and by giving to parole an aura of fairness for both victim and offender.

*Id.* at 340.

**10.** In *Zannino,* the Third Circuit reaffirmed the appropriate standard of review, and made clear that a decision based upon an impermissible reason is an instance which warrants judicial intervention.

The role of judicial review of a Parole Board decision on application for a writ of habeas corpus is to insure that the Board has followed criteria appropriate, rational and consistent with the statute and that its decision is not arbitrary and capricious, nor *based on impermissible considerations.*

531 F.2d at 690.

Commission relied upon two reasons, one of which is impermissible. Faced with a similar situation, a Judge of this Court stated,

> When an agency is charged with responsibility for making a sensitive decision such as release on parole, involving, as the Board's regulations acknowledge, a variety of factors, . . . reliance on an improper ground of decision must vitiate the Board's action. (cites omitted).

*Kohlman v. Norton,* 380 F.Supp. 1073, 1075 (D.Conn.1974); *Zannino, supra* at 691. Although the Commission ultimately may be justified in reaching the same decision in this case, it must act in view of the boundaries which the guidelines, themselves, place upon the Commission's discretion. The Commission must afford petitioner a new hearing and the decision rendered thereafter must be accompanied by adequate and permissible reasons.

Accordingly, it is hereby ordered that a writ will issue discharging petitioner unless the Board grants him a new hearing at the next regularly scheduled visit of the Parole Examiners at the F.C.I., Danbury and, in any event, no later than 60 days from the date hereof.

It is so Ordered.